2007 WY 28

**Roger ROLLINS, Appellant (Plaintiff),**

v.

**WYOMING TRIBUNE–EAGLE,**
**Appellee (Defendant).**

**No. 06–48.**

Supreme Court of Wyoming.

Feb. 16, 2007.

Representing Appellant: Mitchell E. Osborn, Cheyenne, Wyoming.

Representing Appellee: Corinne E. Rutledge and James C. Kaste of Lathrop & Rutledge, P.C., Cheyenne, Wyoming. Argument by Mr. Kaste.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   Roger Rollins filed a charge of discrimination with the Department of Employment, Fair Employment Program, and the Equal Employment Opportunity Commission claiming the Wyoming Tribune–Eagle (WTE) discriminated against him on the basis of his age, in violation of Wyoming's Fair Employment Practices Act, Wyo. Stat. Ann. §§ 27–9–101, et seq.   (LexisNexis 2005), when it terminated his employment as circulation district manager.   The matter was referred to a hearing officer for a contested case hearing, and WTE filed a motion for summary judgment.   Applying the burden-shifting analysis outlined in federal age discrimination decisions, the hearing officer determined, as a matter of law, Mr. Rollins had not established WTE discriminated against him on the basis of his age and granted WTE's summary judgment motion.   The district court affirmed the agency decision, and Mr. Rollins appealed to this Court. We agree no genuine issues of material fact existed on Mr. Rollins' claim and WTE was entitled to a judgment as a matter of law. We affirm.

## ISSUES

[¶ 2] Mr. Rollins articulates two related issues on appeal:

1. Did genuine issues of material facts exist sufficient for the administrative agency to deny the Respondent's Motion for Summary Judgment?

2. Did the District Court err in failing to remand the matter back to the administrative agency for an evidentiary hearing, in light of the fact that genuine issues of material facts existed and summary judgment in favor of the Respondent was inappropriate?

WTE presents a single issue:

Did the Compliance Officer, the Hearing Officer, and the District Court properly determine that Mr. Rollins failed to present any evidence establishing that age actually played a role in the Wyoming Tribune–Eagle's decision to terminate him?

## FACTS

[¶ 3] WTE hired Mr. Rollins as a circulation district manager in October 1999. Jack Oleson became WTE's circulation director at the end of 2002. According to Mr. Rollins, Mr. Oleson made statements indicating he preferred younger workers. Mr. Oleson also made a number of changes to the circulation department, including changing the work hours for the circulation district managers. Mr. Oleson and various other managers expressed concerns about Mr. Rollins' work habits and behaviors, including failing to be at work when he was scheduled, and causing morale problems in the circulation department by complaining to co-workers. The situation came to a head in August 2003, when Doug Merideth was promoted to circulation delivery manager. Mr. Merideth met with Mr. Rollins to discuss concerns about his behavior and attitude, but was not satisfied with Mr. Rollins' response to their discussions.

[¶ 4] After Mr. Merideth advised Mr. Oleson about the problems with Mr. Rollins and his failure to change his behavior, Mr. Oleson terminated Mr. Rollins' employment with WTE on August 21, 2003. Mr. Rollins was fifty-nine years old when he was dis-charged, and he filed a charge of age discrimination against WTE. A compliance officer for the Department of Employment investigated Mr. Rollins' claim and concluded "there was no reasonable cause to conclude [WTE] engaged in discriminatory acts detrimental to [Mr. Rollins]." Therefore, the Labor Standards Program Manager issued a notice of dismissal.

[¶ 5] Mr. Rollins requested a contested case hearing on his claim and the matter was referred to a hearing officer. WTE filed a motion for summary judgment supported by Mr. Oleson's affidavit. Mr. Oleson averred that Mr. Rollins was discharged because he had a bad attitude, at times could not be found at work when he was scheduled to be there, and complained to co-workers, leading to morale problems in the circulation department. Mr. Oleson referred to a number of business letters and memoranda composed by WTE employees documenting Mr. Rollins' behavior, which were included with WTE's summary judgment submittals. Mr. Rollins opposed WTE's summary judgment motion with his affidavit, a former co-worker's affidavit, and several exhibits. In general, Mr. Rollins' submissions indicated his work performance was satisfactory and Mr. Oleson wanted to replace older workers, including Mr. Rollins, with younger persons. The hearing officer considered the parties' submissions and arguments before granting WTE's summary judgment motion. The district court affirmed the hearing officer's decision, and Mr. Rollins appealed.

## DISCUSSION

[¶ 6] The Wyoming Fair Employment Practices Act specifies hearings on discrimination claims shall be conducted in accordance with the Wyoming Administrative Procedures Act. Wyo. Stat. Ann. § 27–9–106(k) (LexisNexis 2005). Summary judgment procedures set out in Rule 56 of the Wyoming Rules of Civil Procedure apply to administrative cases. *Chavez v. Mem'l Hosp. of Sweetwater County*, 2006 WY 82, ¶ 6, 138 P.3d 185, 188 (Wyo.2006); *Neal v. Caballo Rojo, Inc.*, 899 P.2d 56, 58 (Wyo.1995). W.R.C.P. 56(c) states:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Markstein v. Countryside I, L.L.C.,* 2003 WY 122, ¶ 11, 77 P.3d 389, 393 (Wyo.2003), we described the role of summary judgments in litigation:

The purpose of summary judgment is to dispose of suits before trial that present no genuine issue of material fact. *Moore v. Kiljander,* 604 P.2d 204, 207 (Wyo. 1979).... A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Schuler v. Community First Nat. Bank,* 999 P.2d 1303, 1304 (Wyo. 2000). The summary judgment movant has the initial burden of establishing by admissible evidence a prima facie case; once this is accomplished, the burden shifts and the opposing party must present specific facts showing that there is a genuine issue of material fact. *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987); *Gennings v. First Nat. Bank of Thermopolis,* 654 P.2d 154, 156 (Wyo.1982).

*See also, Cathcart v. State Farm Mut. Auto. Ins. Co.,* 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo.2005).

[¶ 7] Because summary judgment may be granted only when there are no issues of material fact and the decision can be made as a matter of law, our plenary standard for reviewing summary judgments is consistent with our standard for judicial review of administrative actions in which we hold unlawful and set aside agency action which is not in accordance with law. Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005). Thus, we review an agency's order granting a summary judgment in the same manner as in the civil context by employing our *de novo* standard of review and utilizing the same standards and reviewing the same materials as the agency. *Chavez,* ¶ 6, 138 P.3d at 188. *See also, Knapp v. Landex Corp.,* 2006 WY 36, ¶ 7, 130 P.3d 924, 926 (Wyo.2006). We consider the record "from the vantage point most favorable to the party who opposed the motion, and this Court will give that party the benefit of all favorable inferences that may fairly be drawn from the record." *Markstein,* ¶ 11, 77 P.3d at 393.

[¶ 8] Section 27–9–105 articulates the substantive law prohibiting discrimination:

(a) It is a discriminatory or unfair employment practice:

(i) For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation or the terms, conditions or privileges of employment against, a qualified disabled person or any person otherwise qualified, because of age, sex, race, creed, color, national origin or ancestry;

* * *

(b) The prohibitions against discrimination based on age in this section apply only to persons at least forty (40) years of age.

Wyoming's law prohibiting discrimination in employment matters on the basis of age is similar to the federal Age Discrimination in Employment Act (ADEA). *See* 29 U.S.C. § 623(a). Thus, we will refer to federal case law for guidance in analyzing claims of ageism. *See, e.g., Kruzich v. Martin–Harris Gallery, LLC,* 2006 WY 7, ¶¶ 13–14, 126 P.3d 867, 872 (Wyo.2006) and *World Mart, Inc. v. Ditsch,* 855 P.2d 1228 (Wyo.1993) (applying federal analysis to claims of handicap discrimination brought under Wyoming law).

[¶ 9] In *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 529 (10th Cir.1994), the Tenth Circuit Court of Appeals coherently described the analysis applicable to age discrimination claims when no direct evidence[1] of discrimination exists:

---

**1.** "A plaintiff proves discrimination through direct evidence by establishing proof of 'an existing policy which itself constitutes discrimination.' " *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir.2000), quoting *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990). Mr. Rollins does not argue there was direct evidence of discrimination but, instead, discusses

The Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), to prove discrimination when no direct evidence of age discrimination exists. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). At the first stage, the plaintiff must prove a prima facie case of discrimination. [The plaintiff] must show that (1) [she] is "within the protected age group"; (2) [she] "was doing satisfactory work"; (3) [she] "was discharged"; and (4) [her] position was filled by a younger person. *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991) (quoting *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988))

If the plaintiff satisfies the prima facie requirements under the ADEA, then the case enters the next stage. In this second stage, the burden of production moves to the defendant. The defendant has to present a legitimate nondiscriminatory reason for its action. If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff. In this third stage of the discrimination analysis, the plaintiff must show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1424–25 (10th Cir.1993). Failure to come forward with evidence of pretext will entitle the defendant to judgment. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Denison*, 941 F.2d at 1421 (evidence of pretext "is crucial in an ADEA case").

[¶ 10] The Tenth Circuit further explained the third stage of the analysis in the context of a summary judgment in *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995):

his case in accordance with the burden-shifting analysis for cases involving indirect evidence of

Because plaintiffs failed to produce direct evidence of intent to discriminate, we have carefully reviewed the record for rebuttal evidence on which a finder of fact could conclude that Unisys' explanations for the challenged decisions were actually a pretext for age discrimination. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Rea*, 29 F.3d 1450, 1455 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). Plaintiffs need not disprove defendant's reasons or demonstrate that age was the only factor motivating the decision, but they "must show that age actually played a role in the [employer's] decision making process and had a determinative influence" on the decision. *Rea*, 29 F.3d at 1455. In opposing summary judgment a plaintiff must be given an opportunity to show by competent evidence that the presumably valid reasons for the [discharge] were really a pretext for a discriminatory decision. *Id.* at 1455. In evaluating plaintiffs' evidence, we must determine whether the evidence interpreted in the light most favorable to the plaintiffs "could persuade a reasonable jury that the employer had discriminated against the plaintiff[s]." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993). If no material facts are in dispute concerning the pretextuality of defendants' actions, summary judgment is appropriate. *Id.*

*See also, Cone*, 14 F.3d at 528.

[¶ 11] In this case, the hearing officer applied the three stage burden-shifting analysis and concluded WTE was entitled to a summary judgment on Mr. Rollins' claim of age discrimination. In particular, she found: 1) Mr. Rollins had established a prima facie case of discrimination; 2) WTE articulated a legitimate non-discriminatory reason for termination; and 3) Mr. Rollins failed to present sufficient evidence to create a genuine issue of material fact that age was a determi-

discrimination.

native factor in WTE's employment decision or that WTE's explanation for his discharge was pretextual.

[¶ 12] In its summary judgment motion, WTE claimed Mr. Rollins failed to fulfill the first step of the analysis because he had not established he was performing satisfactory work or was replaced with a younger person. On appeal, WTE seems to accept the hearing officer's conclusion that Mr. Rollins established a prima facie case of discrimination and focuses its argument on the second and third steps of the test. Given this state of the argument, we need not determine whether genuine issues of material fact exist as to Mr. Rollins' work performance or if he was actually replaced by a younger person. Instead, we will assume for the purposes of this appeal, that Mr. Rollins established a prima facie case of age discrimination.[2] *See Cone*, 14 F.3d at 530 (assuming a prima facie case of discrimination had been established even though the discharge element of the employee's case was problematic).

[¶ 13] In the second step of the analysis, the employer is charged with showing a legitimate nondiscriminatory reason for its action. The order granting summary judgment stated, "The evidence presented by [WTE] demonstrates [Mr. Rollins'] supervisors were having problems with [his] attitude, his work attendance and his complaining to co-workers which [WTE] determined to be disruptive." The hearing officer concluded WTE's explanation for the discharge was a "legitimate nondiscriminatory reason for its decision to discharge." Mr. Rollins claims there were genuine issues of material fact as to whether WTE's satisfied its burden of presenting a legitimate, nondiscriminatory reason for his discharge.

[¶ 14] WTE's summary judgment motion was supported by Circulation Director Jack Oleson's affidavit. Mr. Oleson's affidavit included the following statements relevant to our analysis:

2. Roger Rollins was hired by the Wyoming Tribune–Eagle as a circulation district manager on October 12, 1999. He was promoted to circulation home delivery manager on February 5, 2001. On August 19, 2002, he was returned to the position of circulation district manager. Rollins was demoted because of concerns the circulation director before me had with Rollins' attitude and because Rollins made minimal efforts in the position beyond maintaining the delivery area he was directly responsible for. As a circulation district manager, Rollins was no longer responsible for overall supervision of other circulation district managers.

3. In September, 2002, a meeting was held between Wyoming Tribune–Eagle Circulation Customer Service Manager Debbie Phillips (then interim circulation director), Wyoming Tribune–Eagle Controller Larry Catalano, and Rollins[ ] to discuss Rollins' attitude at work. Rollins was advised during this meeting that his continued negative attitude on the job was disruptive and counterproductive. Debbie Phillips' written recollection of this meeting is attached as Exhibit 1.

4. I was hired as circulation director on December 31, 2002, and became Rollins' department head. From that date until Rollins' termination on August 21, 2003, Rollins met change in the circulation department with resistance and discontent. By not readily accepting new ideas, his work performance fell below par. He exhibited a defiant attitude towards me and other circulation department supervisors responsible for implementing and tracking the changes. He complained often to other employees, causing department morale problems.

5. In March, 2003, I modified the work hours required of the four full time circulation district managers. . . . Rollins resisted the change in hours, and was at times

---

**2.** Although it is not completely clear from his brief, Mr. Rollins seems to argue that once a claimant has established a prima facie case of discrimination, i.e. satisfied the first step of the analysis, summary judgment is not appropriate. That argument is incorrect. In order to survive a motion for summary judgment, the claimant must fulfill all of his duties under the burden-shifting analysis, which include the third stage if the employer successfully meets its obligation in the second step. *See Cone*, 14 F.3d at 530–31.

nowhere to be found at work, despite the new job requirement.

6. On March 10, 2003, I hired Dan Candelaria to be circulation home delivery manager. According to Candelaria, Rollins had a poor attitude in the department and resisted change. Candelaria worked with Rollins until July 25, 2003, at which time Candelaria left the Wyoming Tribune–Eagle. Candelaria drafted a memorandum of his experiences with Rollins while employed at the Wyoming Tribune–Eagle. The memorandum is attached as Exhibit 2.

7. On April 15, 2003, I met with Rollins to discuss my concerns about his ongoing attitude, and his resistance towards change in the circulation department. I told Rollins that his attitude and cooperativeness needed to improve immediately, and that failure to do so would result in termination from the Wyoming Tribune–Eagle. A memorandum I wrote of this meeting is attached as Exhibit 3.

8. When I promoted Doug Merideth from the position of circulation district sales manager to circulation delivery manager on August 7, 2003, Rollins said he had hoped he would have been considered for the position. (Although the title of the position changed, the responsibilities of the circulation delivery manager position are similar to the responsibilities of the home delivery manager position.) Because of Rollins' attitude and resistance toward changes in the circulation department, he was not given the promotion. Rollins referred to Merideth's getting the position over him as a lie, but I do not understand why Rollins thought this was a lie, as I had not offered and had not promised him the position.

9. On August 7, 2003, Merideth met with Rollins to discuss expectations Merideth had of Rollins. Merideth told Rollins that Rollins needed to be more agreeable, that his constant griping had to stop, and that if he did not change, he would be let go. Merideth's memorandum of this meeting is attached as Exhibit 4.

10. On August 14, 2003, Merideth had another meeting with Rollins to discuss his attitude and his continuing griping with fellow employees. Merideth told Rollins that Rollins' complaining and instigation had to stop. Rollins told Merideth he disliked and had no respect for me, as he felt I had lied to him, but that he would go along with changes in the department even if he disagreed with them. Merideth's letter to me describing this meeting is attached as Exhibit 5.

11. Merideth continued to experience problems with Rollins, and on August 20, 2003, he sent another letter to me detailing the problems he continued to have with Rollins. Merideth reported that Rollins was bound and determined to interfere with the progress of the circulation department. Merideth's letter is attached as Exhibit 6.

12. On August 20, 2003, Sandy Cary, then circulation sales coordinator, sent a memorandum to me describing a conversation she had with a friend concerning Rollins. Cary wrote that she was having problems with Rollins' attitude (Cary's memorandum is attached as Exhibit 7). Cary continued to experience problems with Rollins' attitude throughout the month of August. She drafted a memorandum of her experiences with Rollins, which is attached as Exhibit 8.

13. I asked Rollins to resign from his employment at the Wyoming Tribune–Eagle on August 21, 2003, because of his negative attitude and his disruptive effect on the circulation department. Rollins declined to resign. It is important to note that at the time I terminated Rollins from his position at the Wyoming Tribune–Eagle, Rollins asked Meredith and me if he could keep his job if his attitude were to improve. As Rollins had already been asked repeatedly to change his attitude, yet had not, I let him go (the memorandum of Rollins' termination is attached as Exhibit 9). In no way was Rollins' age a factor in my ending his employment.

* * *

18. Roger Rollins was passed over for promotion to circulation home delivery manager because of problems with his attitude, performance of his job duties, and

difficulties he created in the office with co-workers, and not because of his age. Likewise, Rollins was terminated from his employment because of problems with his attitude, performance of his job duties, and difficulties he created in the office with co-workers, and not because of his age.

◼ [¶ 15] To counter WTE's summary judgment motion, Mr. Rollins submitted his affidavit, Sandy Cary's affidavit, and several exhibits. The exhibits included an unsigned, undated performance appraisal reflecting a positive evaluation of Mr. Rollins' work performance; reports of bonuses and commissions he earned for accomplishing certain goals; and unsworn statements written by former WTE employees indicating dissatisfaction with Mr. Oleson's management skills; Mr. Oleson preferred younger workers, particularly blond females; and Mr. Rollins was a good co-worker. These documents were not sworn, and Mr. Rollins provided no foundation for their admissibility. We only consider admissible evidence in summary judgment proceedings. *Knapp*, ¶ 8, 130 P.3d at 926–27; W.R.C.P. 56. Consequently, we will limit our review of Mr. Rollins' submissions to the affidavits he submitted in opposition to WTE's summary judgment motion.

[¶ 16] In his affidavit, Mr. Rollins agreed with Mr. Oleson's statements that he was hired in October 1999 and promoted to home delivery manager in September 2001. Contrary to Mr. Oleson's statement, however, Mr. Rollins denied that he had been demoted in 2002 when his duties were changed. Mr. Rollins' affidavit continued, as follows:

4. I am aware that the documents concerning my "bad attitude" were generated only after I was terminated. When I reviewed my personnel file upon being terminate[d], there were no documents supporting a demotion and the documents attached to [WTE's] Motion for Sum[m]ary Judgment were not in my file. The only documents in my file were my promotion and pay raises I received every year while employed with [WTE].... I have reason to believe that the documents regarding the supposed demotion and "bad attitude" were manufactured or solicited only after my termination and

my contest of the termination (See Affidavit of Sandy Cary).

5. My work was not substandard. Otherwise, I would not have received the merit pay increases every year of my employment. My co-workers have vouched for my abilities and the fact that I was not disruptive. See attached statements from Deb Worley, Tammy Robinson, Ken Rudman, Barb Bunch and Jenny Lane.

6. Early on in his tenure at the Wyoming Tribune–Eagle, Jack Oleson said he wanted to get rid of the older workers. I heard him say this and other people in the office heard him say this. In fact, Jack Oleson was heard to have said "Roger Rollins is too old[."] (See Affidavit of Sandy Car[y] ).

7. I truly believe that Jack Oleson discriminated against me because of my age. He always showed a preference toward younger workers (Cary, Lane, Worley, Rudman). There was no valid basis to terminate my employment.

[¶ 17] Ms. Cary, who was formerly employed as circulation sales coordinator for WTE, stated in her affidavit that, prior to Mr. Rollins' termination, she had never been told he had been demoted. She also stated the letters she wrote which were attached to Mr. Oleson's affidavit were written at his request, after Mr. Rollins had already been terminated and not contemporaneously with the dates on the letters. Ms. Cary further stated: "Mr. Oleson made it clear to me that he preferred the younger employees, especially the younger female employees." She averred that Mr. Oleson stated that Mr. Rollins was "too old" and he "always emphasized that [Mr. Rollins] was the 'oldest' and probably wasn't able to do certain work."

[¶ 18] Challenging the hearing officer's conclusion that WTE satisfied the second stage of the discrimination analysis, Mr. Rollins argues the business memoranda referred to in Mr. Oleson's affidavit were not in his personnel file when he was terminated. Relying on Ms. Cary's averment that she drafted the documents referred to in Mr. Oleson's affidavit at his request and after Mr. Rollins' termination, Mr. Rollins asserts the documents were created after-the-fact in response to his discrimination charge. He claims the

fact the documents were created after his termination reflects adversely upon Mr. Oleson's credibility and should, therefore, discredit WTE's stated reasons for his discharge.

■ [¶ 19] Taking Mr. Rollins' assertions as true, we, nevertheless, cannot conclude there are genuine issues of material fact about WTE's stated reasons for Mr. Rollins' termination because neither Mr. Rollins nor Ms. Cary averred the substantive statements in the business documents attached to Mr. Oleson's affidavit were inaccurate. Ms. Cary did not state the information about Mr. Rollins contained in her memorandum to Mr. Oleson was untrue, and Mr. Rollins did not deny the problems referred to by his supervisors or the fact that he had been repeatedly instructed to change his behavior. Although Mr. Rollins stated he did not believe there was a valid reason to discharge him, his summary judgment evidence did not counter Mr. Oleson's assertions that at times Mr. Rollins could not be found at work when he was scheduled to be there and did not change his behavior after being specifically instructed to do so by various supervisors. The hearing officer stated: "[Mr. Rollins'] erratic work attendance, negative attitude and failure to follow instructions are, individually and collectively, legitimate nondiscriminatory reasons for [WTE's] decision to discharge [Mr. Rollins] from his employment. There are no genuine issues of material fact in this regard." We agree. WTE satisfied the second step of the analysis by showing a legitimate nondiscriminatory reason for discharging Mr. Rollins.

[¶ 20] Under the third step of the analysis, Mr. Rollins had the burden of showing age was a determinative factor in WTE's decision to discharge him or that its explanation for the discharge was merely pretext for age discrimination. To show pretext, Mr. Rollins provides two admissible [3] statements indicating Mr. Oleson made ageist comments:

1. Mr. Rollins averred: "Early on in his tenure at the Wyoming Tribune–Eagle, Jack Oleson said he wanted to get rid of the older workers. I heard him say this and other people heard him say this. In fact, Jack Oleson was heard to have said 'Roger Rollins is too old.'" (See affidavit of Sandy Carey (sic)).

2. Sandy Cary averred: "I recall on at least one occasion Mr. Oleson stating with regard to Roger Rollins 'He is too old.' Further, Mr. Oleson always emphasized that Roger was the 'oldest' and probably wasn't able to do certain work."

Since we are reviewing a summary judgment, we assume Mr. Oleson made these comments.

■ [¶ 21] The relevance of arguably discriminatory comments has been addressed by the Tenth Circuit. In order to establish a genuine issue of material fact regarding pretext on the basis of ageist remarks, the employee must show a nexus between the discriminatory statements and the termination decision. *Cone*, 14 F.3d at 531. *See also, Stone*, 210 F.3d at 1140. In other words, the employee must show that age played an actual role in the termination decision and had a "determinative influence on the outcome." *Stone*, 210 F.3d at 1140, quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994).

■ [¶ 22] Age-related comments referring directly to the employee who is discharged may support an inference of discrimination; however, isolated comments are typically too abstract to support a finding of age discrimination. *Cone*, 14 F.3d at 531, citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.). Stray discriminatory remarks are insufficient to create a jury question because they do not establish the requisite nexus between the comment and the termination decision. *See, e.g., Cone*, 14 F.3d at 531; *Stone*, 210 F.3d at 1140–41.

---

**3.** Mr. Rollins also presented other statements from other co-employees describing ageist comments purportedly made by Mr. Oleson. As we explained above, those statements were not sworn and Mr. Rollins did not provide any foundation for their admissibility; consequently, they are not appropriate for consideration in a summary judgment proceeding. *See* W.R.C.P. 56; *Knapp*, ¶¶ 7–8, 130 P.3d at 926–27.

When the comments are isolated and there is no showing they are related to the challenged employment action they "'are insufficient to show discriminatory animus in termination decisions.'" *Stone*, 210 F.3d at 1140, quoting *Cone*, 14 F.3d at 531.

[¶ 23] In an apparent attempt to show the requisite nexus between his discharge and Mr. Oleson's ageist comments, he pointed to Ms. Cary's affidavit. Ms. Cary stated Mr. Oleson referred directly to Mr. Rollins when describing his preference for younger workers; however, she did not provide the time or context for Mr. Oleson's comments. Other than Mr. Rollins' assertion that Mr. Oleson made the discriminatory statement he overheard "early on" in Mr. Oleson's tenure with WTE, Mr. Rollins provides no details about the context or the timing of any of Mr. Oleson's ageist comments, and, significantly, none of Mr. Rollins' submissions indicate Mr. Oleson's remarks were made in connection with his discharge. To the contrary, Mr. Oleson stated, without contravention, it was Mr. Rollins' encounters with Mr. Meredith, the new circulation delivery manager, in August 2003 which ultimately led to his discharge later that month. In the absence of more detail as to the time and context of Mr. Oleson's comments or evidence showing that the comments were actually related to his discharge, Mr. Rollins simply has not raised a material issue of fact that age played a role in, or had a determinative influence on, WTE's decision to terminate his employment.

[¶ 24] As is obvious from the federal case law and our discussion here, the second and third steps of the burden-shifting analysis are interrelated. Although Mr. Rollins was not required to disprove WTE's reasons for his discharge, in order to satisfy the third stage and avoid summary judgment, he was required to show "'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'" *Rea*, 29 F.3d 1450, 1455 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). *See also, Jones*, 54 F.3d at 632. The undisputed facts presented here do not demonstrate that WTE's explanation for terminat-

ing Mr. Rollins' employment—absenteeism, bad attitude, and refusal to follow instruction—was not credible. In addition, even when we view the evidence in the light most favorable to Mr. Rollins, we cannot conclude that it "'could persuade a reasonable jury that the employer had discriminated against the [employee].'" *Jones*, 54 F.3d at 632, quoting *Hooks*, 997 F.2d at 798.

[¶ 25] A party may not overcome a motion for summary judgment by merely demonstrating some factual dispute exists. Instead, he must convince the court there is a genuine issue of material fact relating to a component of his claim that must be determined by the trier of fact. In this case, Mr. Rollins failed to identify any issues of fact material to whether age was a determinative factor in his termination. Consequently, the hearing examiner properly granted WTE's summary judgment motion.

[¶ 26] Affirmed.