2006 WY 7

Martin KRUZICH, Appellant
(Complainant),

v.

MARTIN–HARRIS GALLERY, LLC,
Appellee (Respondent).

No. 05–49.

Supreme Court of Wyoming.

Jan. 11, 2006.

Representing Appellant: David G. Lewis of Jackson, Wyoming.

Representing Appellee: William P. Schwartz of Ranck & Schwartz, LLC, Jackson, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶1] Martin Kruzich (Kruzich) filed a complaint with the Wyoming Department of Employment (Department) alleging that he was fired from his position at Martin–Harris Gallery, LLC (the Gallery) because of a disability in violation of the Wyoming Fair Employment Practices Act of 1965[1]. After a contested case hearing, a hearing examiner

1. Wyo. Stat. Ann. §§ 27–9–101 et seq. (LexisNexis 2005).

concluded that Kruzich was a "disabled person" under Wyo. Stat. Ann. § 27–9–105 (LexisNexis 2005) and the Department's Rules and Regulations, and that he had proved, by a preponderance of the evidence, a prima facie case of discrimination. However, the hearing examiner found that the Gallery had established that financial problems it was suffering constituted a legitimate, nondiscriminatory reason for terminating Kruzich's employment and that Kruzich had failed to prove that the legitimate reasons articulated by the Gallery were a pretext. The district court affirmed the hearing examiner's decision. We too will affirm.

## ISSUES

[¶ 2]   Kruzich raises two issues:

A.   Whether the Hearing Examiner incorrectly applied the law regarding the shifting burden of proof.

B.   Whether the decision of the Hearing Examiner was unsupported by substantial evidence, and was arbitrary and capricious and not in accordance with the law.

The Gallery accepts Kruzich's characterization of the issues on appeal.

## FACTS

[¶ 3]   In late 1991, Kruzich teamed up with Ron Harris (Harris) to open an art gallery in Jackson, Wyoming. The Gallery was set up as a limited liability company with Harris and Kruzich as the only members. Harris provided all of the initial working capital. Kruzich was appointed the managing partner with the responsibility of running the day-to-day operations of the Gallery. In 1995, Kruzich was diagnosed with Parkinson's disease. Harris was made aware of the condition at the time.

[¶ 4]   The Gallery quickly established a national reputation for contemporary Western art and furniture. Revenues increased, sometimes significantly, almost every year peaking in 2000 at slightly over $2,000,000. Nevertheless, the Gallery struggled to make a profit as it posted losses in every year through 2000 with the exception of small profits in 1994 and 1997. Each year, Harris was forced to make loans to the Gallery to ensure its solvency. By the end of 2000, the Gallery owed Harris over $730,000 in principal and interest.

[¶ 5]   The year 2001 began inauspiciously for the Gallery with sales down significantly from the previous year in the first quarter. In January, Kruzich notified Harris that the Gallery would need an infusion of $65,000 to meet expenses. Harris became concerned that Kruzich was not managing the Gallery effectively given higher than expected expenses in 2000 and the low sales to start off 2001. Harris consulted with a retired orthopedic surgeon about Kruzich's medical condition. On March 17, 2001, Harris traveled from his home in Pennsylvania to Jackson and sought to have Kruzich meet with him and the surgeon. Kruzich refused to meet with them and objected to what he characterized as an intrusion into his personal life. Harris responded with a series of emails over the following week accusing Kruzich of not facing the reality of his disease, claiming that the treatment Kruzich had been receiving had failed, and suggesting that he consider checking into a clinic recommended by the surgeon. While Kruzich rejected the allegations, he told Harris that he would check out the treatment program Harris had recommended.

[¶ 6]   Meanwhile, the Gallery's financial situation was coming to a head. Harris had to loan the Gallery $120,000 in April. Harris determined that the structure and direction of the Gallery needed to be changed. On April 20, 2001, Harris sent an email to Kruzich detailing proposed changes to the job descriptions for Kruzich and other Gallery staff. Harris indicated that he wanted Kruzich to focus on sales, and he also intimated that he was losing confidence in Kruzich's ability to manage the Gallery. Kruzich responded with suggestions for changes in the Gallery's structure and a job description for himself that differed from Harris' proposal. Harris responded by again questioning Kruzich's management and the future financial viability of the Gallery. On April 30, 2001, Kruzich decided to take a one-month leave of absence from the Gallery on the advice of his

doctor. The following day, Harris sent an email to the staff reorganizing the Gallery.

[¶ 7] On May 5, Harris sent an email to Kruzich's wife concluding that "we have to part company with regard to the Gallery." On the same day, Harris sent a memo to Kruzich declaring that Harris wanted to be extricated from the Gallery by October 15, 2001. While the Gallery would continue to operate through the busy summer season, Harris announced that the Gallery was up for sale. To ready the business for sale, Harris sought to slash expenses by restructuring the Gallery, which included terminating some of the employees and Harris taking over as managing partner of the Gallery. After further conflict, Harris wrote to Kruzich on June 26 informing Kruzich that he would not be returning to the Gallery in "any employed or managing capacity." Kruzich never returned to work for the Gallery, which closed its doors permanently in October of 2001.

[¶ 8] In September of 2001, Kruzich filed a complaint with the Department alleging discrimination. Specifically, Kruzich claimed that he had been terminated from his position at the Gallery because of his Parkinson's disease. The Department investigated the complaint, and on August 23, 2002, issued a Notice of Dismissal finding that "there was no reasonable cause to conclude that [the Gallery] engaged in discriminatory acts detrimental to [Kruzich]." Kruzich objected to the dismissal and a contested case hearing was held. Both parties appeared and presented witnesses and exhibits. The hearing examiner found that Kruzich qualified as a disabled person under Wyo. Stat. Ann. § 27–9–105(a)(i) and (d) (LexisNexis 2005)[2] and the Rules and Regulations[3] adopted by the Department pursuant to the Wyoming Fair Employment Practices Act because "although Kruzich's neurological condition did not substantially limit Kruzich's ability to perform major life activities, Harris treated Kruzich as if his medical condition limited Kruzich's ability to work as the Gallery manager." The hearing examiner concluded that Kruzich was subject to an adverse employment action by losing his job and that he proved by a preponderance of the evidence a prima facie case of discrimination. However, the hearing examiner went on to conclude

---

**2.** The provisions cited by the hearing examiner state:

    (a) It is a discriminatory or unfair employment practice:

    (i) For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation or the terms, conditions or privileges of employment against, a qualified disabled person or any person otherwise qualified, because of age, sex, race, creed, color, national origin or ancestry[.]

    . . . .

    (d) As used in this section "qualified disabled person" means a disabled person who is capable of performing a particular job, or who would be capable of performing a particular job with reasonable accommodation to his disability.

**3.** The hearing examiner cited the following subsections from the definitions section of Chapter V of the Disability Discrimination Rules:

    (a) "Disabled person" means any person who has a physical or mental impairment that substantially limits one or more major life activity, has a record of such impairment, or is regarded as having such an impairment.

    (b) "Physical impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; cardiovascu-

lar; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.

    . . . .

    (D) "Major Life Activities" Means Functions Such As Caring For One's Self, Performing Manual Tasks, Walking, Seeing, Hearing, Speaking, Breathing, Learning Or Working.

    . . . .

    (f) "Is regarded as having an impairment" means: (1) has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; (3) has none of the impairments defined in paragraphs (b) and (c) [mental impairment] but is treated by an employer as having a substantially limiting impairment; or (4) has none of the impairments defined in paragraphs (b) and (c) but is subject to an adverse employment action by an employer because of genetic information. Genetic information is defined as information about an individual's genetic tests, the genetic tests of his/her family members, or occurrences of disease or disorder among his/her family members.

3 Weil's Code of Wyoming Rules, Department of Employment, Labor and Statistics, Disability Discrimination Rules, Chapter V, Section 2, 025 140 005 2 (2002).

that the Gallery had articulated a legitimate, nondiscriminatory reason for terminating Kruzich's employment with the evidence of the Gallery's financial condition. The hearing examiner did not agree with Kruzich's contention that the financial reasons cited by the Gallery were a pretext concluding that the "financial problems of the Gallery were a reality, and Harris' action · of reorganizing personnel in an effort to revive a previously successful business was a reasonable response to the dire conditions facing the Gallery." Accordingly, the hearing examiner dismissed Kruzich's complaint of discriminatory or unfair employment practices against the Gallery.

[¶ 9] Kruzich filed a petition for review with the district court. After considering the parties' briefs and arguments at hearing, the court affirmed the hearing examiner's finding that the appropriate and applicable law was applied and that the decision was supported by substantial evidence. Kruzich has appealed that decision to this Court.

## STANDARD OF REVIEW

■■■ [¶ 10] Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis [2005] ), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

. . . .

(E) Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute.

Our review is further governed by the following standards:

We do not afford any special deference to the district court's decision when we review a matter initiated before an administrative agency. Rather, this court reviews the case as if it came directly from the administrative agency. Our review must focus on the evidence and consider the reasonableness of the agency's exercise of judgment while determining if the agency committed any errors of law. If the agency committed any errors of law, this court must correct them.

Further, in appeals where both parties submit evidence at the administrative hearing, appellate review is limited to application of the substantial evidence test. This court is required to review the entire record in making its ultimate determination on appeal. The substantial evidence test to be applied is as follows:

"In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman* [*v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91] ¶ 12[, 49 P.3d 163, ¶ 12 (Wyo.2002) ] (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)).

Even when the factual findings are found to be sufficient under the substantial evidence test, ... this court may be required to apply the arbitrary and capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards.

*Bryant v. State ex rel. Department of Transportation,* 2002 WY 140, ¶¶ 9–11, 55 P.3d 4, ¶¶ 9–11 (Wyo.2002) (some citations omitted).

*State ex rel. Department of Transportation v. Legarda,* 2003 WY 130, ¶¶ 9–10, 77 P.3d 708, 711–12 (Wyo.2003).

## DISCUSSION

[¶ 11] Initially, we consider a request by the Gallery to dismiss this appeal on the grounds that Kruzich's appellate brief did not comply with W.R.A.P. 7.01(e)(2) [4]. Specifically, the Gallery complains that Kruzich failed to provide citations to the record in support of his factual summary. The Gallery insists that this is not a technical deficiency because many of the facts alleged by Kruzich are not, in fact, supported by the record.

[¶ 12] A failure by a party to comply with any of our Rules of Appellate Procedure is grounds for such action that this Court deems appropriate including, but not limited to: a refusal to consider that party's contentions; assessment of costs; dismissal or affirmance. W.R.A.P. 1.03; *see Conner v. Board of County Commissioners, Natrona County,* 2002 WY 148, ¶ 11, 54 P.3d 1274, 1279 (Wyo.2002) (quoting *Basolo v. Gose,* 994 P.2d 968, 969 (Wyo.2000)). We agree that Kruzich's brief is deficient in providing citations to the record in support of his factual summary. Nevertheless, in the exercise of our discretion, we decline to impose the sanction requested by the Gallery. The facts in this case are straightforward, and the violation of our rule did not affect or detract from our ability to review the matter. *Furman v. Rural Electric Company,* 869 P.2d 136, 139 (Wyo.1994).

[¶ 13] Kruzich asserts that the hearing examiner misapplied the burden of proof. In her order, the hearing examiner noted and applied the shifting burden scheme established by the United States Supreme Court

in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

A 1981 United States Supreme Court decision, *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, contains the following explanation of the shifting burden scheme set forth by the Court in an earlier decision: "In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

We have applied this same burden shifting scheme to cases arising under the Wyoming Fair Employment Practices Act of 1965. *See World Mart, Inc. v. Ditsch,* 855 P.2d 1228, 1235–36 (Wyo.1993). Kruzich acknowledges that the hearing examiner cited the proper standard for burden of proof; however, he contends that she mechanistically applied the standard causing her to ignore evidence Kruzich had supplied in his prima facie case contrary to the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[¶ 14] We find little merit in Kruzich's claim. The United States Supreme Court set out a framework of shifting burdens and

---

4. **7.01. Brief of appellant.**

The brief of appellant shall contain under appropriate headings and in the order indicated:

. . . .

(e) A statement of the case including:

(1) The nature of the case, the course of proceedings, and the disposition in the trial court; and

(2) A statement of the facts relevant to the issues presented for review with appropriate references to documents listed in the index of the transmitted record.

presumptions for discrimination claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 in a series of cases including *McDonnell Douglas Corporation*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); and *Reeves*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105. For our purposes, it suffices to quote a summary of that jurisprudence from the Tenth Circuit:

> Once the prima facie case [of discrimination] is established, a presumption of discrimination arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its action. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097, [147 L.Ed.2d 105]. If the employer proffers a legitimate reason, the employee then must prove, by a preponderance of the evidence, that the employer's explanation is merely a pretext for unlawful discrimination. *Id.* at 143, [530 U.S. 133,] 120 S.Ct. 2097, [147 L.Ed.2d 105]. At this point, the *McDonnell Douglas* framework, with its presumptions and burden shifting, drops out and the sole issue is whether unlawful discrimination occurred. *Id.* [at] 142–43, [120 S.Ct. 2097], [530 U.S. 133,] 120 S.Ct. 2097, [147 L.Ed.2d 105]. However, in deciding this issue, the jury is still entitled to consider the evidence establishing the prima facie case and the reasonable inferences drawn therefrom. *Id.* at 143, [530 U.S. 133,] 120 S.Ct. 2097, [147 L.Ed.2d 105].

*Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir.2005); *see also James v. New York Racing Association*, 233 F.3d 149, 156 (2nd Cir.2000). Kruzich's argument is predicated on the allegation that after the Gallery had offered its nondiscriminatory explanation, the hearing examiner did not consider all of the evidence in making the determination of whether the explanation was a pretext. Kruzich, however, fails to identify what evidence the hearing examiner failed to consider. Simply stating an allegation is not a sufficient argument, and Kruzich has failed to provide us with a cogent argument. Kruzich's failure to present us with cogent argument with appropriate citation to the record means that we need not consider his claim

any further. Nevertheless, we note that our review of the record (along with the hearing examiner's findings of fact and conclusions of law) did not reveal any evidence that was overlooked or ignored. Kruzich had to respond to the Gallery's articulation of a nondiscriminatory reason for his discharge with evidence of pretext. As we shall see, the Gallery's explanation is supported by substantial evidence. The hearing examiner applied the proper standards, and her conclusion that Kruzich had failed to rebut the Gallery's evidence that there was a legitimate reason for its actions in terminating his employment is supported by the record.

[¶ 15] Kruzich offers several arguments in support of a contention that the hearing examiner's conclusion that the Gallery's nondiscriminatory explanation for terminating his employment was not a pretext was unsupported by the record. First, he claims that the hearing examiner made contradictory conclusions on ultimate facts. Kruzich argues that the "hearing examiner found that Marty Kruzich was demoted and terminated because he was perceived by his employer to be disabled and thus incapable of performing his duties, and terminated contrary to Wyoming law" while also finding that the employer had a nondiscriminatory reason for termination. Kruzich claims that these findings are mutually exclusive and derive from the hearing examiner's misunderstanding of the burden of proof.

[¶ 16] We have already addressed and rejected Kruzich's claims that the hearing examiner did not apply the correct burden of proof, and we will not spend any more time doing so again. The remainder of Kruzich's argument is not particularly persuasive. Kruzich mischaracterizes the hearing examiner's findings. The hearing examiner did not find that Kruzich was demoted and terminated because of his disability. The hearing examiner found that Kruzich had established by a preponderance of the evidence a *prima facie* case that he had been discriminated against by his employer. Under the shifting presumptions and burden of proof framework of *McDonnell Douglas*, that finding simply meant that the burden

was now on the employer to rebut or contradict that evidence by articulating a nondiscriminatory reason for its actions. Kruzich seems to ignore the meaning of "prima facie:"

> Prima facie evidence is
>
>> [e]vidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and **which if not rebutted or contradicted,** will remain sufficient. Evidence which, **if unexplained or uncontradicted,** is sufficient to sustain a judgment in favor of the issue which it supports, but **which may be contradicted by other evidence.**

*Motor Vehicle Administration v. Karwacki,* 340 Md. 271, 666 A.2d 511, 516–17 (1995) (quoting Black's Law Dictionary, 1190 (6th ed.1990)) (emphasis added). In the context of Title VII cases, the phrase "prima facie case" denotes "the establishment of a legally mandatory, rebuttable presumption." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981). The hearing examiner's findings are not contradictory; rather, they are entirely consistent with the *McDonnell Douglas* burden shifting framework and the concept of a prima facie case. Kruzich offers no legal authority or analysis for his claim so, again, we need not consider his argument any further.

[¶ 17] Next, Kruzich contends that the hearing examiner's conclusions about the financial condition of the Gallery were not supported by the record. The essence of Kruzich's argument is that the financial reasons offered by the Gallery were a pretense with the implication that these financial problems did not manifest themselves until after Harris' confrontation with Kruzich over his Parkinson's in mid-March. He insists that there was no evidence of a connection between his discharge and the excuse proffered by the Gallery.

[¶ 18] Kruzich's contentions cannot withstand scrutiny of the record. The record clearly shows that the Gallery's financial health was poor. Kruzich focuses on the Gallery's revenues, pointing out that they have increased over time with 2000 constituting a "banner year." Revenues, of course, constitute only one part of a company's financial picture. It is unsurprising that Kruzich stresses revenues because the remaining components of the Gallery's finances paint a bleak picture. With the exception of small profits in 1994 and 1997, the Gallery consistently lost money. Harris had to make cash loans to the Gallery every year of its existence but one to ensure solvency. In 1998 and 1999, the Gallery repaid a portion of the loan principle but, nevertheless, by September 30, 2001, the Gallery owed Harris over $1,000,000 in principal and interest.

[¶ 19] Kruzich himself recognized the financial problems of the Gallery. He even requested $65,000 in loans in January from Harris, historically a large amount that early in the year. Harris expressed his concern about the fiscal health of the Gallery and set out some ideas for changes to the Gallery and its operations in an email to Kruzich in April 2001. In his response, Kruzich acknowledged the validity of Harris' concerns but disagreed with some of Harris' suggestions. By late April, the parties' dispute over the future of the Gallery had reached a crisis point. In early May, Harris decided to pull the plug on the Gallery if he could not sell it by October. He decided to keep the Gallery open through its busy summer season while the search for a buyer proceeded. In order to cut costs, Harris eliminated some staff and replaced them with temporary workers. Harris also elected to take over management of the Gallery himself and leave Kruzich to manage floor sales. Their relationship deteriorated rapidly. With Kruzich continuing to insist that he remain as managing partner, Harris terminated his employment.

[¶ 20] These facts support a conclusion that the Gallery's finances were very poor. They also show that there was a connection between the Gallery's financial situation and Kruzich's termination. The hearing examiner noted these general facts in her findings. She concluded that the continued ill health of the Gallery's finances in 2001 constituted a valid nondiscriminatory explanation for Kruzich's termination. The record supports that conclusion.

## CONCLUSION

[¶ 21] The hearing examiner's findings and conclusions are supported by substantial evidence. The district court properly affirmed the hearing examiner's decision. Affirmed.