2009 WY 120

**Nora Belle CELLERS, Appellant (Defendant),**

v.

**Steven M. ADAMI, Successor Trustee of the Albert Stewart Cellers Trust, dated July 21, 2000, Appellee (Plaintiff).**

**Steven M. Adami, successor Trustee of the Albert Stewart Cellers Trust, dated July 21, 2000, Appellant (Plaintiff),**

v.

**Nora Belle Cellers, Appellee (Defendant).**

**Nos. S–08–0110, S–08–0111.**

Supreme Court of Wyoming.

Sept. 29, 2009.

Representing Nora Belle Cellers: Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming.

Representing Steven M. Adami, Successor Trustee of the Albert Stewart Cellers Trust: Benjamin S. Kirven and Dennis M. Kirven of Kirven & Kirven, P.C., Buffalo, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] This review of a summary judgment involves the interpretation of a marital settlement agreement. The primary issue is

whether in that agreement the former wife relinquished her right as the named beneficiary to the proceeds of an investment account maintained by her former husband, now deceased. The district court held that the former wife had relinquished her right to the investment account proceeds, and that those proceeds belonged to the trustee of the deceased former husband's trust. The district court also held, however, that the trustee was not entitled to prejudgment interest on those proceeds. The former wife has appealed on the relinquishment issue, and the trustee has cross-appealed on the prejudgment interest issue.

[¶ 2] We hold that, under the unambiguous language of the marital settlement agreement, the former wife did not relinquish her right as the named beneficiary to the investment account proceeds; consequently, we reverse and remand on that issue with directions that the district court enter judgment in favor of the former wife because further proceedings in this matter would serve no useful purpose. *State v. Homar*, 798 P.2d 824, 826 (Wyo.1990). Our disposition of that issue makes moot the trustee's cross-appeal on the prejudgment interest issue.

## FACTS

[¶ 3] The parties do not dispute the salient facts. On January 13, 1960, Albert Stewart Cellers (hereinafter Stewart Cellers) created the investment account in question; a year later, he designated his parents as named beneficiaries of the account. On April 2, 1980, Stewart Cellers and Nora Belle Cellers married; on February 15, 2000, Stewart Cellers removed his parents as the named beneficiaries on the investment account and designated Nora Belle Cellers as the named beneficiary. In July 2000, Stewart Cellers established a trust in his own name, and the trust designated Steven M. Adami as successor trustee.

[¶ 4] On September 11, 2001, Stewart Cellers and Nora Belle Cellers separated and executed the marital settlement agreement in question. We now identify those agreement provisions that are pertinent to this issue on appeal. Recital D of this agreement stated the purpose of the agreement:

The purpose of this agreement is to make a final and complete settlement of all rights and obligations between the parties, including those concerning their property, the support and maintenance of each of them, rights to homestead and exemption and inheritance and succession, and all other matters existing between the parties growing out of their marital relationship.

Section 1 of the agreement identified the property to be received by Nora Belle Cellers. Section 2 of the agreement identified the property to be received by Stewart Cellers. Under that section, Stewart Cellers received, among other property, the investment account in question "as his sole and separate property." Section 6 of the agreement set forth general provisions. Among those general provisions, the most pertinent are those entitled *Full Disclosure of Property Interest, Integration Clause,* and *Comprehension by the Parties.* The general provision entitled *Full Disclosure of Property Interest* provides:

Each party warrants and represents to the other that he or she has made a full disclosure of all property and interests in property owned or believed to be owned by him or her, and there are no other assets of the marriage than those mentioned in this agreement, and that he or she has not secreted or hypothecated any such assets.

The general provision entitled *Integration Clause* provides:

This agreement contains the final and entire agreement of the parties. There are no representations, terms, conditions, statements, warranties, promises, covenants, or understandings, oral or written, other than those expressly set forth herein. This agreement is intended to be, and shall be, a full, final and complete settlement agreement between the parties. The provisions of this Agreement shall not be modified except by mutual consent by the parties, expressed in writing.

The general provision entitled *Comprehension by the Parties* provides:

The parties hereto declare that they fully understand all of the terms and provisions

of this agreement and regard the same as fair and reasonable; that each has been, or has had the opportunity to be, advised of his or her respective legal rights and obligations, by independent counsel of his or her own choice; and that each signs this agreement freely and voluntarily and intending thereby that this agreement shall benefit and be binding upon the parties hereto and their respective legal representatives, heirs, successors and assigns.

[¶ 5] On September 25, 2001, the district court filed the couple's divorce decree which specifically incorporated by reference the marital settlement agreement. On November 15, 2001, Stewart Cellers amended his trust by eliminating provisions which granted specific distributions to various family members and by directing the successor trustee, on Stewart Cellers' death, to distribute the entire remaining residual trust to the Stewart Cellers Foundation, Inc. On July 2, 2004, Stewart Cellers executed his will which included a standard pour-over provision that left all the rest, residue, and remainder of his estate and property to his trust.

[¶ 6] On May 22, 2005, Stewart Cellers died; on April 13, 2006, the investment firm holding the investment account in question transferred the investment account funds to Nora Belle Cellers, the named beneficiary, because Stewart Cellers in his lifetime had not changed the beneficiary designation. On August 11, 2006, Steven M. Adami, as successor trustee of the Albert Stewart Cellers Trust, asked Nora Belle Cellers to return the investment account funds to the trust. She refused, and Mr. Adami filed his complaint against her alleging conversion.

[¶ 7] Both Steven M. Adami and Nora Belle Cellers initially filed summary judgment motions which the district court denied. Later, Mr. Adami filed a renewed summary judgment motion on September 25, 2007, which the district court granted by order dated April 21, 2008. That order incorporated by reference the district court's decision letter dated January 17, 2008. Nora Belle Cellers timely appealed that order. The district court denied Mr. Adami's claim for prejudgment interest on the investment account funds, and Mr. Adami timely appealed that order.

## STANDARD OF REVIEW

[¶ 8] Our summary judgment standard of review is clear:

A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Covington v. W.R. Grace–Conn., Inc.,* 952 P.2d 1105, 1106 (Wyo.1998); *see also* W.R.C.P. 56(c). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as the lower court employed and used. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997). We do not accord deference to the district court's decisions on issues of law. *Kanzler v. Renner,* 937 P.2d 1337, 1341 (Wyo.1997). In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unambiguous. *Kirkwood,* 937 P.2d at 208; *Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994).

*Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC,* 2008 WY 69, ¶ 5, 185 P.3d 1259, 1261 (Wyo.2008).

### Construction Of Divorce Property Settlement Agreements

[¶ 9] "This Court applies the standards of contract construction to construe divorce property settlement agreements." *Wunsch v. Pickering,* 2008 WY 131, ¶ 16, 195 P.3d 1032, 1039 (Wyo.2008). We recognize

[t]he ultimate goal when interpreting a contract is to discern the intention of the parties to the document. In doing so, we first look to the specific terms of the contract and give them their plain and ordinary meaning. Plain meaning is that meaning which the language would convey to reasonable persons at the time and place of its use. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract.

*Comet Energy Serv.*, ¶ 6, 185 P.3d at 1261–62 (internal citations and quotation marks omitted). Disposition of disputes relating to an unambiguous contract may be accomplished by a summary judgment. *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 651 (Wyo.1989).

## DISCUSSION

[¶ 10] Mr. Adami maintains that *Aetna Life Ins. Co. v. Bushnell*, 190 F.Supp. 499 (D.Wyo.1960), answers in his favor the question presented in this appeal. *Bushnell* was an interpleader action brought by a life insurance company to determine the proper distribution of the proceeds of a life insurance policy owned by the husband in which the wife was the designated beneficiary to receive the insurance proceeds on the husband's death. *Id.* at 499–500. The husband and wife had executed a property settlement agreement which was ultimately confirmed and annexed to a divorce decree. *Id.* at 500. In that property settlement agreement, the parties agreed that the husband's life insurance policy was his sole, separate and absolute property and the wife's life insurance policy was her sole, separate and absolute property; and each party released the other from all rights or claims of whatever kind growing out of their marital relationship. *Id.* at 501. Following the divorce, the husband died. *Id.* at 500. Although by the terms of the husband's life insurance policy, the husband had reserved the right to change the beneficiary designation, he had not done so either after the divorce or by the time of his death. *Id.* In a bench trial to determine the proper distribution of the deceased husband's life insurance proceeds, the district court framed the issue to be whether the divorced wife in the property settlement agreement had effectively disposed of her interest as the designated beneficiary of her divorced husband's life insurance policy. *Id.* at 501. In holding that in the property settlement agreement the divorced wife had impliedly disposed of her interest, the district court's reasoning, based on all of the facts and circumstances, was as follows:

1. The parties intended and agreed to make a final and complete disposition of their property; disposition of their financial interests was contemplated in the agreement. *Id.* at 502.

2. The husband as the policy insured who had reserved the right to change the beneficiary was the real and only owner of the policy. *Id.*

3. The wife as the policy beneficiary had no rights of ownership over the husband's policy; her only interest in that policy was an inchoate financial benefit in the event of the husband's death. *Id.*

4. By conveying in the property settlement agreement to her husband his own policy, the wife was not conveying to him her property interest in that policy because she had no such property interest. *Id.* Moreover, the wife was not conveying to her husband that which he already had, namely, ownership of his own policy. *Id.*

5. The language in the property settlement agreement by which the wife conveyed to the husband his own policy as his sole, separate and absolute property

> would be meaningless and unnecessary were it not to be implied that she thereby intended to relinquish to him the only right she had, namely, that of an expectancy.... The conclusion is inescapable, therefore, that she exchanged her rights as a beneficiary in return for other property received under the agreement.... [The wife] agreed to and did "give" this gift of expectancy back to [the husband]. She is, therefore, precluded from asserting any ownership of the property.

*Id.*

[¶ 11] Mr. Adami argues that we should apply the *Bushnell* reasoning to the Cellers' marital settlement agreement and hold that Nora Belle Cellers relinquished her expectancy interest as the designated beneficiary in Stewart Cellers' investment account by signing that agreement which contained language that set over to Stewart Cellers the investment account as his sole and separate property.

[¶ 12] Responding to Mr. Adami's argument, Nora Belle Cellers maintains that the divorce decree and the marital settlement agreement did not terminate her expectancy

interest as the named beneficiary in the investment account and points us to several cases that support her position. Among the cases she relies on are *Costello v. Costello,* 379 F.Supp. 630 (D.Wyo.1974); *Aetna Life Insurance Co. v. Wadsworth,* 102 Wash.2d 652, 689 P.2d 46 (1984) (en banc); and *In Re Estate of Bruce,* 265 Mont. 431, 877 P.2d 999 (1994). *Costello* was decided by the same court that had decided *Bushnell* fourteen years earlier, and Nora Belle Cellers argues that *Costello* appears to soften *Bushnell's* "harsh rule" of implied intent to relinquish the inchoate expectancy possessed by a named beneficiary. To determine if this softening occurred, we shall unpack that decision's salient facts and the court's legal analysis. Harold Costello's son and daughter from a previous marriage originally sued Travelers Insurance Company for the proceeds of their deceased father's life insurance policy which had named their stepmother, Hope, as beneficiary. 379 F.Supp. at 631. Travelers Insurance Company paid the policy proceeds into the court; and Hope intervened, claiming she was entitled to the proceeds. *Id.* A bench trial ensued and the following facts developed. Harold had purchased the Travelers' policy in 1931, naming his mother as beneficiary. *Id.* In 1952, Harold married Hope; and in 1966, Harold changed the primary beneficiary designation on the Travelers' policy to Hope, with his son and daughter as contingent beneficiaries if Hope died. *Id.* Harold reserved the right to change the policy beneficiary. *Id.* In July 1970, Harold and Hope divorced, executing a property settlement agreement; and a divorce decree was entered. *Id.* Harold died in January 1972, about nineteen months after his divorce from Hope. *Id.* at 632. At the time of that divorce and at Harold's death, Hope remained the primary beneficiary, and Harold's son and daughter the contingent beneficiaries, on the Travelers' policy. *Id.* at 631. Harold had, however, seven months after his divorce, changed the primary beneficiary designation on another insurance policy from his daughter to his estate. *Id.* At Harold's death, in his safety deposit box, were found two uncompleted and unsigned change of beneficiary forms, one for the Travelers' policy in dispute and one for yet another insurance policy. *Id.* at 632. In the bench trial, the court found that Harold was a man of wealth, extremely involved in business with skill and acumen, and a knowledgeable person who undoubtedly was aware of the insurance policies when the divorce property settlement agreement with Hope was executed. *Id.* at 631. The court also considered a provision of that executed property settlement agreement and a provision of the divorce decree. The provision of the executed property settlement agreement read:

"(F) WAIVER OF CLAIM AND JURISDICTION OF COURT

....

(2) It is further stipulated and agreed by and between the parties hereto that this agreement is intended to be and shall be a full, final and complete property settlement agreement between the parties hereto, and shall be in full settlement of all claims of the Wife against the Husband for alimony, either temporary or permanent, and that neither party shall have any claim nor make any claim for property or money against the other, nor against the estate of the other by virtue of their marital relationship, which might arise by right of intestate or testate's succession, homestead or widow's allowance, and that the provisions of this agreement shall be incorporated in any decree of divorce...."

*Id.* at 631. The provision of the divorce decree read:

It is Further ... Decreed ... that the Settlement Agreement ... be ... approved and confirmed ... and upon the Defendant delivering to the Plaintiff the securities, Warranty Deed and Bill of Sale described in said agreement, the Plaintiff shall have no further claim against the Defendant for support, alimony or further property settlement, and that Plaintiff shall have no further claim or right whatsoever to any of the property, real or personal, or funds standing in the name of the Defendant or to any property or funds accumulated during the marriage of the parties.

*Id.* Commenting on the property settlement agreement, the court considered it "artfully drawn" and making "extensive provisions for

division of the [parties'] property." *Id.* at 633.

[¶ 13] ·Against the backdrop of all of these facts, the court stated the precise question to be "whether [Hope] by virtue of the terms of the settlement agreement awarding [her] considerable real and personal property and other choses in action ... waived or relinquished her right, as the named primary beneficiary, to the proceeds of the policy where such policy was not named in the agreement or [divorce] decree? The Court finds that she did not." *Id.* at 632. Based upon all of the above-stated facts, it was the court's "opinion" "that [Harold] intentionally failed to make any change in the designation of Hope ... as the primary beneficiary; and, in effect, he thus confirmed her as the primary beneficiary" in the policy in question. *Id.* at 633. The court concluded by stating, "[t]he Court has reviewed the evidence proffered by [Harold's son and daughter from a prior marriage], over [Hope's] objection ... and finds that it does not rise to a height to carry [their] burden of proof." *Id.* at 634.

[¶ 14] Central to the court's determination that Hope did not waive or relinquish in the settlement agreement or the divorce decree her "expectancy interest" in the policy's proceeds were these legal principles: (1) the "expectancy interest" is not derived from the status of the marital relationship, but from the terms of the policy, *id.* at 632; (2) general expressions or clauses in property settlement agreements are not to be construed as including renunciation of expectancies, and a beneficiary retains her status under a policy if it does not clearly appear from the settlement agreement that in addition to the segregation of the spouse's property it was intended to deprive either spouse of the right to take property under an insurance contract of the other, *id.* at 633; (3) absent a specific disclaimer in the settlement agreement, the court will not imply such a renunciation. *Id.*

[¶ 15] Having unpacked *Costello* and carefully considered the court's analysis, we agree with Nora Belle Cellers that *Costello* appears to have softened *Bushnell's* implied renunciation rule in favor of a specific disclaimer rule. We use the word "appears" cautiously, however, because both cases were fact-driven bench trials in which the court received and considered conflicting evidence, unlike the present case which is in summary judgment posture.

[¶ 16] Nora Belle Cellers also relies on *Aetna Life Insurance Co. v. Wadsworth*, 102 Wash.2d 652, 689 P.2d 46 (1984) (en banc), and *In Re Estate of Bruce*, 265 Mont. 431, 877 P.2d 999 (1994). In Wadsworth, an interpleader action brought by the life insurance company, the dispute over a group term life insurance policy proceeds was between the decedent's first wife and his wife at the time of decedent's death. 689 P.2d at 47. The divorce decree between the decedent and his first wife purported to transfer all of the first wife's interests in all of decedent's life insurance policies to decedent, the first wife remaining as the named beneficiary of the group term life insurance policy at the time of his death. *Id.* Upon decedent's death, his widow became entitled to one-half of the proceeds of the group term life insurance policy as it was community property purchased by the couple's community funds for the most recent term. *Id.* at 51. Because the decedent had the power to direct the disposition of the other half of the policy's proceeds, however, the disposition of that share depended upon the validity of his designation of his first wife as named beneficiary. *Id.* In decedent and first wife's separation agreement, incorporated into their divorce decree, first wife transferred to him "as his sole and separate property, free and clear of any right, title, or interest on her part ... all life insurance policies insuring his life." *Id.* First wife argued, and the Washington Supreme Court agreed, that "such a decree should divest the former spouse only of present ownership interests in life insurance policies, not of any expectancy interest [the former spouse] might have as named beneficiary." *Id.* Noting that the failure to distinguish properly between present property rights in insurance policies and the expectancies of beneficiaries has created confusion in interpreting property settlement agreements incorporated in divorce decrees and made difficult the court's task of determining to whom insurance proceeds should be paid, the court adopted a rule that

should encourage individuals to consider carefully the disposition of life insurance policies in dissolution. Such careful consideration will clarify the intent of the parties and reduce the need, at a later point in time, to inquire into the donative intent of the deceased insured. In addition, the rule we adopt will simplify the procedure of determining to whom life insurance proceeds are to be distributed.

*Id.* at 52. The rule is as follows:

To the extent no community property rights are invaded, the named beneficiary will generally be entitled to the proceeds. A dissolution decree will divest the former spouse of his or her expectancy as named beneficiary, however, if (1) the dissolution decree, in clear and specific language, states that the former spouse is to be divested of his or her expectancy as beneficiary *and* (2) the policy owner formally executes this stated intention to change the beneficiary within a reasonable time after the dissolution decree has been entered. Thus, if the insured spouse dies within this reasonable time period without formally executing the previously stated intention to change the beneficiary, the former spouse will not be entitled to the proceeds. After a reasonable time has passed, however, the clause in the dissolution decree will be ineffective and the former spouse, if named beneficiary, will be entitled to the proceeds. In any event, one year after dissolution, it shall be conclusively presumed that the policy owner intended to retain the named beneficiary as the one entitled to the proceeds.

*Id.* (emphasis in original).

[¶ 17] Applying the first prong of the newly adopted rule, the court noted that in the divorce decree the decedent's first wife conveyed to the decedent, as his separate property, all life insurance policies insuring his life, but the decree did not mention the first wife's expectancy as named beneficiary; therefore, the decree's language was inconclusive as it was neither sufficiently clear nor sufficiently specific to indicate an intent to divest the first wife of her expectancy. *Id.* at 52–53. The court further observed that, even had the decree language been clear and

specific that the first wife was divested of her expectancy as named beneficiary, such language would have been ineffective because the decedent had died over three years after the date of the decree and the one-year conclusive presumption that the decedent intended to retain the named beneficiary (his first wife) applied. *Id.* at 53.

[¶ 18] In *In Re Estate of Bruce,* 265 Mont. 431, 877 P.2d 999 (1994), the dispute concerned the deceased former husband's individual retirement account which was generally referred to and specifically awarded to him in his property settlement agreement with his former wife. *Id.* at 1002. That property settlement agreement did not, however, refer to his former wife's interest as a named beneficiary of that account. *Id.* The Montana Supreme Court considered the language and logic of two of its earlier decisions, one of which concerned a retirement account and the other a life insurance policy. *Id.* at 1001–02. In *Sowell v. Teachers' Retirement System,* 214 Mont. 200, 693 P.2d 1222, 1224 (1984), the retirement account case, the court stated:

The property settlement agreement does not specifically refer to Carolyn's designation as beneficiary, but rather, relinquishes Carolyn's rights of "dower, support, maintenance, succession, homestead, inheritance, or heirship" and her right to "all property, both real and personal which the other party now has or may hereafter acquire." This language does not specifically cover Carolyn's inchoate right to acquire property upon the happening of a future event.

[¶ 19] In *Eschler v. Eschler,* 257 Mont. 360, 849 P.2d 196, 201 (1993), the life insurance policy case, the court stated:

Whether a property settlement agreement should be deemed to bar the divorced wife is a question of the construction of the agreement itself. Where there is no provision that the effecting of the settlement agreement should deprive her of her rights as named beneficiary and she in fact remains named as beneficiary, the settlement agreement *will not be give a broader scope than its express terms specify* and she will

not be barred from her right as the named beneficiary.

(quoting *Girard v. Pardun*, 318 N.W.2d 137, 138–39 (S.D.1982) (emphasis in original)). Relying on those statements, the court in *Bruce* held that the former wife had relinquished in her property settlement agreement any immediate ownership interest in her deceased former husband's individual retirement account by virtue of her marital interest in it, but had not relinquished her right as a named beneficiary of that account. 877 P.2d at 1002.

[¶ 20] Our own research reveals that many other courts have also addressed these questions, and we therefore benefit from the consideration these questions have been given by them. In *Bersch v. VanKleeck*, 112 Wis.2d 594, 334 N.W.2d 114 (1983), the Wisconsin Supreme Court considered the spouses' property settlement agreement incorporated into the divorce decree that provided each spouse was awarded his or her own life insurance policy, and the husband before his death never changed his former wife as the named beneficiary on his policy. *Id.* at 116. Recognizing there are two distinct property interests in a life insurance policy, the owner's interest and the named beneficiary's expectancy interest in the policy proceeds, the court stated that a general expression such as "all the rest of the property" in a divorce decree offers little guidance in determining what the parties intended. *Id.* at 116–17. Similarly, the court stated that language awarding the parties their respective policies does not state how a beneficiary's interest is to be affected. *Id.* Accordingly, the court adopted the rule that the language must be an explicit waiver or relinquishment of the beneficiary's interest. *Id.* The court explained:

> From a public policy standpoint, this rule is supportable in a variety of ways. It will encourage the prompt settlement of insurance claims and avoid unnecessary litigation. Without this rule, there would be quite an incentive for an interested party to litigate if there was an ambiguity in the divorce decree, especially if significant sums of money were at stake. It also avoids speculating about what the parties

may have intended. It requires little effort to change a beneficiary on a policy after a divorce or include an explicit waiver or relinquishment of the beneficiary interest in the divorce decree.

*Id.*

[¶ 21] In *Culbertson v. Continental Assurance Co.*, 631 P.2d 906 (Utah 1981), the Utah Supreme Court had to determine whether the former wife had relinquished her expectancy as the named beneficiary in her former husband's profit-sharing plan in light of a divorce decree provision that read he is "awarded and there is hereby confirmed to him as his sole and separate property that property now in his possession and under his control, including funds on deposit with [his employer] constituting a profit-sharing plan." *Id.* at 909. Based upon an analysis of cases from other states, the court identified three categories of cases: First, in the agreement or divorce decree, the former spouse relinquishes any claim to ownership of the insurance policy and agrees to execute any documents to sever any ownership interest; "[u]nless there is in addition a specific provision in the decree or [agreement] explicitly waiving the expectancy interest the former spouse is entitled to receive the proceeds as designated beneficiary." *Id.* at 912. Second, the insurance policy is not specifically mentioned in the agreement or divorce decree, but there are provisions effecting a complete settlement of the parties' property interests and awarding each all right, title, and interest to his or her respective property; "[a]n agreement with such general provisions is deemed merely to effect a division of the parties' property, and the courts rule they cannot reasonably infer from such language that the spouse has released an expectancy interest as the beneficiary under [the] former spouse's insurance policy." *Id.* at 912–13. Third, the language in the agreement or divorce decree is sufficiently comprehensive as to establish clearly that the spouse has waived or relinquished any expectancy. *Id.* at 913. With these categories in mind, the court found there were no broad, comprehensive provisions in the subject divorce decree which could reasonably be construed as a relinquishment or waiver of the former wife's expectancy. The language did

not indicate the parties' attention was drawn to the expectancy of the profit-sharing plan, and there was no expressed intention to waive all interest, present and future. *Id.*

[¶ 22] We note in passing that in 1998, the Utah legislature enacted a statute which created the presumption that divorce revokes a former spouse's rights as a survivor beneficiary of a number of documents, including an insurance policy, an annuity policy, a deed, a will, and a trust. Utah Code Ann. § 75–2–804(2). *See Stillman v. Teachers Insurance and Annuity Ass'n,* 343 F.3d 1311 (10th Cir. 2003). The revocation presumption must be rebutted by the document's express terms. *Id.* We also note that the Colorado legislature in 1995 enacted a similar law which represents the legislative determination that the failure of one spouse to revoke the designation of the other spouse as beneficiary after dissolution of the marriage more likely than not represents inattention, therefore the statute attempts to give effect to the decedent's presumptive intent. Colo. Stat. § 15–11–804(2), 5 C.R.S. (2001); *see Hill v. DeWitt,* 54 P.3d 849 (Colo.2002).

▮ [¶ 23] Having considered the above and foregoing cases and the arguments of counsel, we agree with those courts that hold the language in the property settlement agreement or divorce decree must reveal a specific and explicit waiver or relinquishment of the named beneficiary's expectancy interest. The language used in the Cellers' agreement does identify the investment account as set over to Stewart Cellers, but makes no specific reference to Nora Belle Cellers' expectancy interest as the named beneficiary of the proceeds of that account. The general statements in Recital D and the general provisions set forth in Section 6 of the agreement are certainly sweeping as to all property and interests and a full and complete settlement concerning their property and all matters existing between them growing out of their marital relationship, but they are too general and insufficient to reach Nora Belle Cellers' expectancy interest in the proceeds of the investment account. We hold that she did not relinquish in that property settlement agreement her expectancy right as the named beneficiary to the pro-

ceeds of the investment account in question and that those proceeds belong to her. We reverse and remand the district court's order with directions that the court enter judgment in her favor.