DAVIS, Chief Justice.
[¶1] Lucile Anderson applied to the Department of Health for Medicaid nursing home benefits. The Department found Ms. Anderson eligible for the benefits but suspended her eligibility as a penalty for her transfer of assets at below fair market value. Ms. Anderson appealed the length of the penalty period and lost that challenge. Her sons thereafter paid the attorney fees and costs she incurred in her appeal, and she applied to have that payment treated as a return of assets, which would shorten the penalty period. The Department denied the application and, following an evidentiary hearing, its denial was upheld by the Department's director and the district court. We reverse.
ISSUE
[¶2] Ms. Anderson presents two issues on appeal, which we restate as the following single issue:
Did the Department act in accordance with law when it denied Ms. Anderson's application to have her sons' payment of her attorney fees treated as a return of assets?
FACTS
[¶3] Lucile Anderson is in her late eighties and suffers from dementia and numerous other medical conditions that make her unable to care for herself independently. On March 12, 2015, Ms. Anderson was admitted to the Laramie Care Center, and on April 10, 2015, she transferred to Spring Wind, an assisted living facility in Laramie. On October *1164 22, 2015, she applied for Medicaid benefits.
[¶4] In her Medicaid application, which she submitted through her attorney, Ms. Anderson acknowledged that she had transferred assets in the sixty-month period preceding her application.[1] She identified cash and real property that she had transferred to her sons and their wives between the dates of May 28, 2015 and October 19, 2015, including a modular home in Laramie and a 472-acre ranch in Colorado, which she reported were both sold to her son Philip and his wife for fair market value. Of the assets transferred during the look-back period, Ms. Anderson reported $83,476 as uncompensated transfers.
[¶5] On January 27, 2016, the Department notified Ms. Anderson that because she had transferred resources at less than fair market value in the sixty-month period preceding her application, she was not eligible to receive Medicaid benefits until January 12, 2020. In making that determination, the Department rejected Ms. Anderson's reported value of her uncompensated transfers and instead found she had transferred $441,382.60 in assets without fair compensation.
[¶6] Ms. Anderson appealed the Department's calculation, with the primary dispute being over the fair market value of the Colorado ranch. An evidentiary hearing was held before the Office of Administrative Hearings (OAH), and the OAH issued proposed findings and conclusions of law recommending that the Department's director uphold the Department's determination.[2] The Department's director accepted the proposed decision and entered a final order, which Ms. Anderson appealed and the district court upheld. Ms. Anderson did not appeal the district court's ruling.
[¶7] On March 27, 2017, Ms. Anderson, through her attorney, informed the Department that her sons had paid her attorneys $23,818.63, which was the amount of fees and costs she incurred in her appeal of the Department's penalty period determination. Ms. Anderson requested that the Department treat the payment of those fees as a partial return of the cash and assets she gave her sons during the look-back period and reduce the penalty period to account for the return of assets.[3]
[¶8] On April 6, 2017, the Department denied Ms. Anderson's request. By letter, the Department stated:
The Department of Health has reviewed your request to reduce the transfer penalty period for payment of attorney's fees and costs your client incurred as a result of her (or her Power of Attorney's) decision to appeal the Division's calculation of the transfer penalty.
Department of Health Medicaid Rules for Administrative Hearings, Chapter 4, Section 20 states attorney fees are the responsibility of the contestant. Regardless of the source of funds used to pay your attorney's fees and costs, the contestant is responsible for such payment, and therefore it may not be considered a gift back to reduce the transfer penalty.
[¶9] On May 4, 2017, Ms. Anderson appealed the denial of her request, and the matter was referred to the OAH for a contested case hearing. Following an evidentiary hearing, the OAH issued proposed findings and conclusions of law recommending that the Department's director reverse the Department's denial. The Department filed exceptions to *1165 the OAH-proposed decision and proposed its own findings and conclusions of law. On July 28, 2017, the Department issued an Order Entering Final Decision, which upheld the Department's denial of Ms. Anderson's requested penalty period reduction.
[¶10] On August 25, 2017, Ms. Anderson filed a petition for review of the Department's decision, and on January 24, 2018, the district court issued an order affirming it. Ms. Anderson then filed a timely notice of appeal to this Court.
STANDARD OF REVIEW
[¶11] "We review an appeal from a district court's review of an administrative agency's decision as if the case came directly from the agency and give no deference to the district court." State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div. v. Lysne , 2018 WY 107, ¶ 11, 426 P.3d 290, 294 (Wyo. 2018) (citing Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div. , 2017 WY 119, ¶ 23, 403 P.3d 980, 986 (Wyo. 2017) ). The dispositive issue in this appeal is a question of law so our review of the Department's decision is de novo. Lysne , ¶ 12, 426 P.3d at 295 (citing 403 P.3d at 987 ) ("We review an agency's conclusions of law de novo and will affirm only if the agency's conclusions are in accordance with the law.").
DISCUSSION
[¶12] Ms. Anderson contends the Department has changed positions throughout her appeal, and she urges this Court to reject the Department's new arguments on appeal. The Department does not dispute that it has revised its arguments but contends this is proper because the Court may affirm the administrative decision on any basis supported by the record. We agree with Ms. Anderson that the Department's new argument on appeal is not properly before this Court. We will first address our reasons for that conclusion, and then we will turn to the question of whether the Department's attorney fees rule precluded the payment of Ms. Anderson's attorney fees from qualifying as a return of assets.
A. New Arguments on Appeal
[¶13] The Department's evolving position in this case centers on its proffered interpretations of the statute governing Medicaid transfer-of-asset penalties and the bases for reducing or waiving those penalties. We therefore set forth the relevant portions of that statute to provide context for our discussion. Wyo. Stat. Ann. § 42-2-402 provides:
(a) If an institutionalized individual or the individual's spouse has disposed of, for less than fair market value, any asset or interest therein within sixty (60) months before or any time after the first date the individual has both applied for medical assistance and been institutionalized, the individual is ineligible for medical assistance for long-term care services for the period of time determined under subsection (b) of this section.
(b) For a transfer within the provisions of subsection (a) of this section, the number of months of ineligibility for long-term care services shall be the total, cumulative uncompensated value of all assets transferred within the sixty (60) month period, divided by the average monthly cost to a private patient for nursing facility services on the date of application. ...
* * * *
(e) An institutionalized individual is not rendered ineligible for long-term care services due to a transfer within the provisions of subsection (a) of this section if the department determines :
(i) The individual intended to dispose of the asset at fair market value or for other valuable consideration;
(ii) The asset was transferred exclusively for a purpose other than to qualify for medical assistance;
(iii) That to the extent assets were transferred for less than fair market value, that the assets or their fair market equivalent have been returned to the individual; or
(iv) To grant a waiver of the excess resources created by the uncompensated transfer because denial of eligibility would cause undue hardship for the individual, based on criteria established by the secretary of health and human services.
*1166 Wyo. Stat. Ann. § 42-2-402 (LexisNexis 2017) (emphasis added).
[¶14] The Department's original denial of Ms. Anderson's application for a reduction of her penalty period was based solely on its rule requiring a Medicaid contestant to pay her own attorney fees and costs and its view that "[r]egardless of the source of funds used to pay your attorney's fees and costs, the contestant is responsible for such payment, and therefore it may not be considered a gift back to reduce the transfer penalty." During the contested proceeding, however, the Department offered two additional statutory arguments: 1) the Department is not required to apply one of the section Wyo. Stat. Ann. § 42-2-402(e) grounds for waiving or reducing a penalty period and instead has sole discretion whether to do so; and 2) the Department may deny a reduction in the penalty period if it determines the asset was returned exclusively for the purpose of qualifying for Medicaid.
[¶15] The Department's director accepted the Department's argument based on its attorney fee rule. He did not, however, address either of the Department's statutory arguments. He instead provided two alternative bases for upholding the Department's denial.
51. ... Wyoming Statute § 42-2-402(e)(iii) (LexisNexis) states that an institutionalized individual is not rendered ineligible for long-term care services due to an asset transfer for less than fair market value within the look back period if the Department determines to the extent assets were transferred for less than fair market value, that the assets or their fair market equivalent have been returned to the individual. Here, Anderson's sons paid Cook and Associates for legal services for Anderson. Payment for legal services does not constitute the assets or their fair market equivalent. Therefore, the Department's determination that Anderson's sons did not return the assets or their fair market equivalent to Anderson was in accordance with law.
52. Even if payment for legal services was considered the assets or their fair market equivalent, Wyoming Statute § 42-2-402(e)(iii) (LexisNexis) does not mandate the Department provide credit for partial returns. Indeed, it does not mandate the Department provide credit for anything other than a full return of the assets or their fair market equivalent. ... Here, Anderson's sons paid the sum of $23,818.63 to Cook and Associates for legal services. Payment for those services does not constitute the full return of the assets or their fair market equivalent - nearly $450,000 - to Anderson. Therefore, the Department properly determined that Anderson's sons did not return the assets or their fair market equivalent to Anderson.
[¶16] In its briefing to the district court, in response to Ms. Anderson's petition for review, the Department further revised its position. The Department did not reassert its original statutory arguments, and nor did it argue in support of the alternative bases cited in the Director's final decision. It instead adhered to its original argument that its attorney fees rule precluded the payment of fees from being considered a return of assets, and it offered two new statutory arguments. First, it argued that because Ms. Anderson's sons had commingled the originally gifted assets with their own assets, Ms. Anderson could not and did not prove that the assets returned were the precise assets given. Second, it argued that the plain meaning of the term "returned" required that any returned assets be given directly to Ms. Anderson, not to a third-party provider such as her attorneys.
[¶17] The district court rejected the Department's argument that the asset returned had to be the precise asset originally transferred, but it agreed with the Department that because the fee payment was made to Ms. Anderson's attorneys rather than directly to her, it did not qualify as a return of assets. Having affirmed the Department on that basis, the court did not address application of the Department's attorney fees rule.
[¶18] In the Department's briefing to this Court, it has omitted any discussion of its attorney fees rule and has framed its position as follows:
The district court did not reach the issue regarding payment of attorney's fees under *1167 the Medicaid Rules, finding that the analysis ended with the fact that the assets were not returned to Anderson. The Department similarly limits its analysis to the return of the assets.
[¶19] Ms. Anderson argues that because this revised basis for denying Ms. Anderson's penalty reduction was not included in the Department's original decision, we should not consider it. The Department argues that this Court may affirm an agency decision on any ground supported by the record and that its revised basis is therefore properly before the Court. In support, it points to our decision in Powder River Basin Res. Council v. Wyo. Dep't of Envtl. Quality , 2010 WY 25, ¶ 33, 226 P.3d 809, 819 (Wyo. 2010). Because we find Powder River distinguishable, we agree with Ms. Anderson that the Department's revised basis for its decision is not properly before this Court.
[¶20] In Powder River , we held:
In the administrative law context, we have indicated that "we review an agency's order granting a summary judgment in the same manner as in the civil context by employing our de novo standard of review and utilizing the same standards and reviewing the same materials as the agency." Rollins v. Wyo. Tribune-Eagle , 2007 WY 28, ¶ 7 n.7, 152 P.3d 367, 370 (Wyo. 2007). In the civil context, it is well established that "we can affirm a district court's summary judgment order on any basis apparent in the record." Stewart Title Guaranty Co. v. Tilden , 2005 WY 53, ¶ 22, 110 P.3d 865, 874 n.7 (Wyo. 2005). The combination of these two concepts suggests that we can affirm an administrative agency's summary judgment decision on any basis apparent in the record.
Powder River , ¶ 33, 226 P.3d at 819 ; see also Sierra Club v. Wyo. Dep't of Envtl. Quality , 2011 WY 42, ¶ 45, 251 P.3d 310, 322 (Wyo. 2011) (quoting Powder River and upholding summary judgment on basis different from agency but supported by record).
[¶21] Powder River announced a rule applicable to summary judgment appeals, not to appeals following evidentiary hearings. Setting that distinction aside, however, and saving for another day the question whether Powder River should apply outside the summary judgment context, we find an additional critical distinction that makes this an inappropriate case to approach in the same manner. In Powder River , we were willing to uphold an agency decision on an alternative basis because doing so had no practical effect on the matter's outcome.
In this appeal, the DEQ does not explicitly contend that it reached its decision on this basis, nor did it defend its decision on this basis before the Council. However, that is the logical underpinning of its decision. We could remand this case to allow the DEQ to explain its decision on the proper basis, but we fail to see what that would accomplish. See , State ex rel. Arnold v. Ommen , 2009 WY 24, ¶ 32, 201 P.3d 1127, 1136 (Wyo. 2009). In this case, the facts are not in dispute, "making it possible for this Court to review without re-weighing disputed evidence." Wells Fargo Bank v. Hodder , 2006 WY 128, ¶ 32, 144 P.3d 401, 413 (Wyo. 2006). Based on the DEQ's analysis as reflected in the record, there is no doubt that the fundamental position of the DEQ was that no increment exceedances could be predicted to result from the operation of the Dry Fork facility. Based on common sense and notions of judicial economy, it is appropriate for us to decline to remand a case if further proceedings "would serve no useful purpose." Cellers v. Adami , 2009 WY 120, ¶ 2, 216 P.3d 1134, 1136 (Wyo. 2009) ; State v. Homar , 798 P.2d 824, 826 (Wyo. 1990).
Powder River , ¶ 37, 226 P.3d at 820 ; see also Sierra Club , ¶ 45, 251 P.3d at 321-22.
[¶22] In this case, on the other hand, a post hoc change in the Department's basis for denying Ms. Anderson's application would be contrary to her procedural rights and prejudicial to her interests. The Department's Medicaid rules require that it provide an applicant notice of its action and the reasons for its action.
[¶23] Chapter 4, Section 5 of the Department's Medicaid rules provides:
(a) Applicants and clients. Where the right to a hearing is provided by this Chapter, the Department shall provide notice *1168 at the time of any adverse action. The notice shall include a statement:
* * * *
(viii) Of the reason(s) for the intended action;
(ix) Of the specific regulations that support, or the change in federal or state law that requires the action[.]
Wyo. Dep't of Health, Medicaid Rules, Ch. 4, § 5 (2011).
[¶24] The Department's written notice to Ms. Anderson cited only one basis for denying her application, and that was the Chapter 4, Section 20 requirement that a contestant be responsible for her own attorney fees. That the cited rule was the sole basis for the denial was confirmed by the testimony of Dana Pepmeier, the Department's Eligibility & Education Program Manager who considered Ms. Anderson's application and issued the Department's written notice. She testified:
Q. So let me be clear. The reason you restricted it is because legal fees are Mrs. Anderson's responsibility to pay; is that correct?
A. Yes.
* * * *
Q. So the request was not denied because the sons paid directly for the legal fees?
A. No.
[¶25] The record is thus clear that Ms. Anderson had no notice of the Department's revised basis for its decision before she went to hearing. Importantly, under the circumstances of this case, that lack of notice deprived Ms. Anderson not only of an opportunity to present additional evidence, it also deprived her of the opportunity to simply correct the problem. In that regard, Ms. Pepmeier provided testimony showing that Ms. Anderson's sons could have placed the money they paid to her attorneys directly into her checking account and made the payments from that account.
Q. Ms. Pepmeier, you heard Mr. Anderson talk about the $2,000 a month, --
A. Yes.
Q. -- the income that an individual can have in their bank account at the time, you know - on any given month.
A. Yeah. And I think he was referring to resources.
Q. Okay. So could you explain your understanding of how that works with this case.
A. Okay. If money comes in to the account during the month, that money has to be spent by the end of the month or it counts as a resource of the first of the following month.
Q. Okay. But there's no restriction of money coming in and out?
A. No, not as long as that is spent within the same month that it's received.
[¶26] Thus, had Ms. Anderson been on notice, her sons could have re-structured the asset return and thereby avoided the Department's revised basis for its denial. Specifically, Ms. Anderson's attorneys could have returned the funds to her sons, and her sons could have then paid the funds directly to her, with her then paying the attorneys from those funds. Ms. Pepmeier's testimony confirms that the asset return could have been corrected in that manner, and if it had been, the only remaining impediment would have been the Department's application of its attorney fees rule.
Q. Okay. So in this case if it were determined that the only mistake or incorrect process that was followed was that Mrs. Anderson's sons paid the bills directly, could that be remedied by Cook & Associates returning that money and they paying the money then to Mrs. Anderson's account, and she in turn paying a check from her account for those legal services?
A. I think that would - The way I interpret Chapter 4, Section 20, we would still be restricted to allow that as a deduction for transfer penalty because she's paying attorney fees that she's responsible for.
[¶27] Under these circumstances, we find Powder River inapplicable. The Department has not so much offered a record-supported alternative legal basis for affirming its decision below as it has presented a new argument on appeal that reflects a revised theory *1169 of its case. In keeping with our standard practice, we decline to consider it.
Wyoming Rule of Appellate Procedure 12.09(a) limits an appellate court's review of administrative action to "issues set forth in the petition and raised before the agency." Accordingly, we have routinely held that, with the exception of jurisdictional or certain fundamental issues, issues raised for the first time on appeal from an administrative decision will not be considered. State ex rel. Dep't of Family Servs. v. Kisling , 2013 WY 91, ¶ 14, 305 P.3d 1157, 1162 (Wyo. 2013) ; BP Am. Prod. Co. v. Dep't of Revenue , 2006 WY 27, ¶ 18, 130 P.3d 438, 462 (Wyo. 2006).
Crofts v. State ex rel. Dep't of Game & Fish , 2016 WY 4, ¶ 15, 367 P.3d 619, 623 (Wyo. 2016) ; see also Davis v. City of Cheyenne , 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004) ("This court has taken a dim view of a litigant trying a case on one theory and appealing it on another. ... Parties are bound by the theories they advanced below.").
B. Application of the Department's Attorney Fees Rule
[¶28] In its brief to this Court, the Department did not offer argument on Chapter 4, Section 20 of its Medicaid rules, its original basis for denying Ms. Anderson's application for a penalty period reduction. During oral argument, the Department explained that it chose not to argue on behalf of that original basis because its rules have since changed and Chapter 4, Section 20 is no longer the governing rule.[4] The Department also commented during argument that while Chapter 4, Section 20 makes a contestant responsible for her own attorney fees, it is essentially silent on the question of whether returned funds may be used to pay a contestant's attorney fees. The Department's lack of briefing and its comments during oral argument appear tantamount to a concession that its original basis for denying Ms. Anderson's application was not in accordance with law. We will nonetheless briefly address the question as Ms. Anderson has properly placed the issue before the Court.
[¶29] We use our standard rules of statutory interpretation when we interpret administrative rules. Stowe v. State , 2014 WY 97, ¶ 25, 331 P.3d 127, 134 (Wyo. 2014) (citing Wilson Advisory Comm'n v. Bd. of Cty. Comm'rs , 2012 WY 163, ¶ 31, 292 P.3d 855, 863 (Wyo. 2012) ).
In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in pari materia and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo . We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia . When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.
FH v. State , 2018 WY 83, ¶ 24, 423 P.3d 295, 303 (Wyo. 2018) (quoting Town of Pine Bluffs v. Eisele , 2017 WY 117, ¶ 9, 403 P.3d 126, 128-29 (Wyo. 2017) ).
[¶30] Chapter 4, Section 20 of the Department's Medicaid rules governs representation during administrative hearings. It provides:
Section 20. Representation.
*1170 (a) Any applicant, client, or individual provider has the right to represent themselves, to be represented by a lawyer admitted to practice in Wyoming, or, if the contestant is an applicant or client, by a representative authorized by Section 5(a)(iv).
(i) If an applicant or client chooses a representative who is not legally authorized to speak for that applicant or client, the applicant shall provide written notice of appointment of the spokesman to the Department.
(ii) A non-lawyer authorized to represent an applicant or client under this provision may advocate for the applicant or client in a representative capacity, draft pleadings or other documents. However, this provision does not authorize a person who is not a lawyer admitted to practice in Wyoming to provide legal advice or services, or represent any person before the courts of the State of Wyoming.
(b) A provider which is a corporation, professional corporation, limited liability company, partnership, governmental entity, or any other legal entity, may appear and be represented by a lawyer admitted to practice in Wyoming.
(c) The Department may request the Attorney General to assist in contested case hearings to the extent required by W.S. § 16-3-112(c).
(d) If the contestant is represented by an attorney, payment of attorney's fees and costs are the responsibility of the contestant.
Wyo. Dep't of Health, Medicaid Rules, Ch. 4, § 20 (2011) (emphasis added).
[¶31] Read in context, Section 20(d), by its plain terms, does no more than specify that it is the contestant, and not the Department, that will be responsible for the contestant's attorney fees and costs. The rule does not refer to transfer penalties or the return of assets to a contestant, and it is contained in Chapter 4 governing hearings, not in Chapter 18 governing Medicaid eligibility and transfer penalties. Moreover, it is telling that since its dispute with Ms. Anderson, the Department has added a rule to its Chapter 18 Medicaid eligibility rules specifying that "[a] return of resources to pay for attorney fees during a contested case shall not reduce the penalty period." Wyo. Dep't of Health, Medicaid Rules, Ch. 18, § 8(h)(ii)(A) (2018). We assume there would have been no need for such a rule if Chapter 4, Section 20(d) had truly addressed the issue. See Moncrief v. Wyo. State Bd. of Equalization , 856 P.2d 440, 445 (Wyo. 1993) (citing Osborne v. Consol. Judicial Ret. Sys. of North Carolina , 333 N.C. 246, 424 S.E.2d 115, 117 (1993) ) (looking to subsequent legislation as aid to statutory interpretation); see also Bates v. Chicago Lumber Co. of Omaha , 2016 WY 58, ¶ 28, 375 P.3d 732, 739 (Wyo. 2016).
[¶32] We find it clear that Chapter 4, Section 20(d) of the Department's Medicaid rules did not, as a matter of law, preclude the payment of Ms. Anderson's attorney fees from being treated as a return of assets. To the extent that the Department has suggested that treating the fee payment as a return of resources equated to the Department in fact paying Ms. Anderson's fees and costs, the Department failed in its proof. See Wyo. Dep't of Health, Medicaid Rules, Ch. 4, § 19(a) (2011) ("The Department shall have the burden of proof."). The Department presented no evidence as to how much sooner than January 2020 Ms. Anderson would be eligible for benefits, or the costs to the Medicaid program for that earlier eligibility date. In the absence of such evidence, the record contains no support for the Department's assertion that treating the fee payment as a return of assets means that the Department will as a practical matter be paying Ms. Anderson's fees and costs.[5]
CONCLUSION
[¶33] The Department erred in denying Ms. Anderson's application for a reduction in her penalty period to account for the return *1171 of assets represented by her sons' payment of attorney fees and costs she incurred in her legal dispute with the Department. Reversed and remanded for action consistent with this opinion.

The sixty-month period preceding a Medicaid application is referred to as the look-back period. If a Medicaid applicant transfers assets during that period for less than their fair market value, that transfer may result in the imposition of a penalty that will delay the applicant's eligibility. Wyo. Stat. Ann. § 42-2-402(a) (LexisNexis 2017). The penalty period is calculated by dividing the total uncompensated value of transferred assets by the average monthly cost to a private patient for nursing facility services. Wyo. Stat. Ann. § 42-2-402(b).

Under the Department's administrative rules, an applicant's first appeal of a Department decision is to the Department's director. The director may appoint a hearing officer, which may be the OAH, and the hearing officer will recommend a decision to the director. Wyo. Dep't of Health, Medicaid Rules, Ch. 4, §§ 18, 22 (2011).

Wyo. Stat. Ann. § 42-2-402(e)(iii) provides for a reduction of the penalty period to the extent that transferred assets or their fair market equivalent are returned to the applicant.

On April 11, 2018, the Department added a new rule to Chapter 18 of its Medicaid rules. Chapter 18 governs Medicaid eligibility, and the new rule provides that "[a] return of resources to pay for attorney fees during a contested case shall not reduce the penalty period for the applicant or recipient. Attorney fees are the sole responsibility of the contestant under Chapter 4." Wyo. Dep't of Health, Medicaid Rules, Ch. 18, § 8(h)(ii)(A) (2018). The new rule is not at issue in this appeal, and we therefore offer no opinion on whether it is authorized by statute.

Even had such evidence been presented, it would likely be of little probative value. The record suggests Ms. Anderson's eligibility date would move up only a few months, meaning the latter part of 2019. Given that Ms. Anderson's circumstances may of course change before then, any attempt to quantify the claimed costs would amount to speculation.